UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20645-Civ-MORENO
MAGISTRATE JUDGE P.A. WHITE

EDUARDO GONZALEZ,

     Petitioner,

v.                                    REPORT OF
                                      MAGISTRATE JUDGE
Julie Jones,[1]

     Respondent.
_____/


I.   Introduction

    Eduardo Gonzalez, a state prisoner currently confined at Gulf Correctional Institution, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking on numerous grounds his convictions for sexual battery on a child under 12 and two counts of lewd and lascivious molestation on a child under 12 entered following a jury trial in Miami-Dade County Circuit Court, Case No. F05-39755.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition (DE#1), the Court has the respondent's response (DE#14) to the court's order to show

---

[1]Julie Jones replaced Michael D. Crews as Secretary of the Florida Department of Corrections and is substituted as party pursuant to Fed.R.Civ.P. 25(d).

cause with supporting Appendices (DE#14,15) containing copies of relevant state court records filed.

## II.   <u>Claims</u>

Construing the arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the petitioner raises the following grounds for relief:

1.  The prosecutor's improper and prejudicial closing argument violated his right to a fair trial. (DE#1:7-12).

2.  The state court's determination that the victim's statement was reliable enough to constitute admissible hearsay was contrary to federal law. (DE#1:13-15).

3.  He was denied effective assistance of counsel, where his lawyer failed to convey a favorable plea offer extended by the state which would have resulted in a ten year term of imprisonment. (DE#1:18-23).

4.  He was denied effective assistance of counsel, where his lawyer failed to conduct independent DNA testing. (DE#1:23-24).

5.  He was denied effective assistance of counsel, where his lawyer failed to move to disqualify the trial judge on the basis of judicial bias in allowing the prosecutor to invade the province of the jury. (DE#1:24-25).

6.  He was denied effective assistance of counsel, where his lawyer failed to move to disqualify the trial judge, who allowed a witness to give expert testimony without having been qualified as an expert. (DE#1:25-26).

7.  He was denied effective assistance of counsel, where his lawyer failed to object to the verdict in count one where the jury did not specifically find that petitioner was over the age of 18 at the time of the offense. (DE#1:26-32).

8.  He was denied effective assistance of counsel, where his lawyer failed to object to the trial judge assisting the prosecutor on direct examination. (DE#1:32-33).

9.  He was denied effective assistance of counsel, where his lawyer failed to investigate the facts surrounding the case. (DE#1:33).

10. The prosecutor's improper comments violated his right to a fair trial. (DE#1:33-34).

11. He was denied effective assistance of counsel, where his lawyer failed to object to the state playing a video tape that was in English and Spanish causing confusion to jurors. (DE#1:34).

12. Cumulative errors deprived him of his right to a fair trial. (DE#1:35).

13. His sentences on two counts of lewd and lascivious molestation on a child under the age of 12 constituted double jeopardy. (DE#1:35-36).

14. He was denied effective assistance of counsel, where his lawyer failed to object to the introduction of the victim's interview. (DE#1:36).

### III.  Procedural History

On January 27, 2006, an Information was filed charging petitioner with sexual battery on a child under 12, in violation of Fla.Stat. §794.011(2) and two counts of lewd and lascivious molestation on a child under 12, in violation of Fla.Stat. §800.04(5)(b). (DE#14:Ex.B). Petitioner was convicted as charged, following a jury verdict. (DE#14:Ex.C). He was adjudicated guilty and sentenced as a prison releasee reoffender to three consecutive life sentences. (DE#14:Ex.E).

Thereafter, Petitioner prosecuted his direct appeal, filing his initial brief, wherein he raised two claims: (1) the state's

3

improper and prejudicial closing argument violated his right to a
fair trial and (2) the trial court erred in repeatedly admitting
the victims's hearsay statements. (DE#14:Ex.F). On May 19, 2010, in
a written opinion, the Third District Court of Appeal *per
curiam* affirmed the judgment. <u>Gonzalez v. State</u>, 35 So.3d 984 (Fla.
3d DCA 2010)(the court found that none of the prosecutor's comments
were outside the bounds of proper closing arguments and there was
no error in the trial judge's admission of child hearsay
statements); (DE#14:Ex.I). No rehearing motion was filed, and as a
result, the mandate issued on June 4, 2010. (DE#14:Ex.J).

Petitioner also did not seek discretionary review with the
Florida Supreme Court. The time for doing so expired thirty days
after the time for filing rehearing motions expired, or no later
than **June 18, 2010**.[2] Since he did not seek rehearing or
discretionary review to the Florida Supreme Court, he is not
entitled to an additional ninety days to file a petition for a writ
of certiorari in the United States Supreme Court. <u>Gonzalez v.
Thaler</u>, ___U.S.___, 132 S.Ct. 641, 646 (2012).[3] Therefore, at the

_____

[2]Pursuant to <u>Fla.R.App.P.</u> 9.120(b), a motion to invoke discretionary review
must be filed within 30 days of rendition of the order to be reviewed.

[3]In applying the Supreme Court's <u>Gonzalez</u> opinion to this case, the
petitioner here is not entitled to the 90-day period for seeking certiorari
review with the United States Supreme Court, because after his judgment was
affirmed on direct appeal, petitioner did not attempt to obtain discretionary
review by Florida's state court of last resort-the Florida Supreme Court, nor did
he seek rehearing with the appellate court. <u>See</u> <u>Gonzalez v. Thaler</u>,___U.S.___,
132 S.Ct. 641, 653-54 (2012) (holding that conviction becomes final upon
expiration of time for seeking direct review); <u>Jimenez v. Quarterman</u>, 555 U.S.
113, 118-21, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules
for calculating the one-year period under §2244(d)(1)(A)). <u>See also</u> <u>Clay v.
United States</u>, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)(holding
that "[f]inality attaches when this Court affirms a conviction on the merits on
direct review or denies a petition for a writ of certiorari, or when the time for
filing a certiorari petition expires."); <u>Chavers v. Secretary, Florida Dept. of
Corrections</u>, 468 F.3d 1273 (11th Cir. 2006)(holding that one-year statute of
limitations established by AEDPA began to run 90 days after Florida appellate
court affirmed habeas petitioner's conviction, not 90 days after mandate was
issued by that court). In other words, where a state prisoner, who pursues a
direct appeal, but does not pursue discretionary review in the state's highest

earliest, his conviction is final on **June 18, 2010.** However, assuming, without deciding, that petitioner was entitled to seek review to the U.S. Supreme Court, then alternatively, his conviction becomes final at the latest on **August 17, 2010,** when the 90-day period for seeking discretionary review with the U.S. Supreme Court expired following affirmance of his convictions on direct appeal. For purposes of this Report, the undersigned has utilized this later date.

The one-year federal limitations period ran unchecked for **261 days**, from the time the petitioner's conviction became final on **August 17, 2010** until **May 5, 2011**, when he returned to state court and filed a 3.800 motion to correct sentence. (DE#14:Ex.K). The motion was denied on May 25, 2011. (DE#14:Ex.M). The proceeding concluded on **June 24, 2011**, when the 30-day appeal period expired.[4]

Before petitioner's time to appeal the denial of his 3.800 motion expired, petitioner filed on **June 3, 2011,** a Rule 3.850 motion for post-conviction relief in state court. (DE#14:Ex.N). In his Rule 3.850 motion, petitioner raised numerous claims, including claims 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of this federal petition, as listed above.[5] (DE#14:Ex.N,O).

---

court after the intermediate appellate court affirms his conviction, the conviction becomes final when time for seeking such discretionary review in the state's highest court expires. <u>Gonzalez</u>, __U.S.__, 132 S.Ct. 641 (2012).

[4]The Eleventh Circuit has held that the time during which a habeas petitioner could have sought appeal of the denial of a post-conviction motion tolls AEDPA's one-year limitations period even though the petitioner did not seek appellate review of the denial order. <u>Cramer v. Sec'y, Dep't of Corr's</u>, 461 F.3d 1380, 1384 (11th Cir. 2006).

[5]In his Rule 3.850 post-conviction motion, petitioner argued that trial counsel was ineffective for failing to: convey a favorable plea offer prior to trial; object to the playing of a videotape, which was in both English and Spanish, to the jury; have independent DNA testing of evidence; move to disqualify the judge for bias when the judge allowed the prosecutor to invade the

The post conviction court granted an evidentiary hearing only as to claim one, counsel's failure to convey a plea offer. At the hearing, the court also briefly addressed claim 14, raised in the amended Rule 3.850 motion, alleging that counsel was ineffective for allowing the state to play a video taped interview of R.C. that displayed a date different from when the interview was conducted. (DE#14:Ex.P). Prior to the start of the hearing, post conviction counsel informed the court that petitioner had not been allowed to bring his glasses and documents due to a scheduling conflict. (DE#14:Ex.P:39-42). The post conviction court decided to proceed with the evidentiary hearing but noted that counsel would be permitted to place petitioner's case back on the calendar to address anything in petitioner's documents that was not addressed during the hearing.(DE#14:Ex.P:42-43).

The state called Randal Petre, Esquire, petitioner's trial counsel, to testify. Attorney Petre recalled that he had discussed with petitioner the state's plea offer of 10 years in prison followed by 10 years of probation with the special condition that petitioner complete a mentally disordered sexual offender treatment program.(DE#14:Ex.P:46-47). Counsel stated that petitioner rejected the offer.(Id.). Moreover, counsel maintained that he had not

---

province of the jury; move to disqualify the judge for allowing expert testimony without the witness being qualified as such; object to the verdict of guilty for the crime of capital sexual battery when the jury did not find that the defendant was over the age of 18; object to the judge assisting the prosecutor on how to conduct a direct examination of a witness and investigate the case. In addition, petitioner argued that the trial court invaded the province of the jury when defendant was sentenced to mandatory life without the jury making a specific finding of union or penetration; the prosecutor made improper comments during trial; the cumulative errors of his trial attorney require a new trial and defendant's judgment and sentence violate the prohibition against double jeopardy. During the pendency of the 3.850 motion, petitioner filed a pro se amended motion for post conviction relief. In that amended motion he raised an additional claim: that his attorney was ineffective for allowing the state to play a video tape of the victim's interview which contained a date different from when the actual interview was conducted. (DE#14:Ex.N,O).

noticed the incorrect date on the videotape.(Id.: 50). He indicated that the mere discrepancy in the date would not have made the videotape inadmissible.(Id.:49). The trial court found that Attorney Petre's testimony was credible.(DE#14:Ex.Q)

On the other hand, petitioner testified that he would have accepted the state's plea offer of 10 years imprisonment followed by 10 years probation if counsel would have conveyed the plea.(DE#14:Ex.P:65). According to petitioner, he only learned of the plea offer after the trial had ended when he reviewed his trial transcripts.(DE#14:Ex.P:67). The court determined that petitioner was not credible.(DE#14:Ex.Q:10).

Nonetheless, at the conclusion of the evidentiary hearing, the trial court withheld final ruling to allow petitioner to bring to the court's attention anything that was in his notes that was not addressed.(DE#14:Ex.P:95). There is no indication whatsoever in the record that the case was put back on the judge's calendar. Six months after the hearing was held, in a written order, the trial court denied relief as to all of petitioner's claims. (DE#14:Ex.Q). That denial was subsequently *per curiam* affirmed in a decision without written opinion, Gonzalez v. State, 129 So.3d 1077 (Fla. 3d DCA 2013), with the mandate issuing on **January 13, 2014.** (DE#14:Ex.V,W).

An additional **32 days** of untolled time expired from the conclusion of his Rule 3.850 proceeding on **January 13, 2014,** until **February 14, 2014,** when petitioner then came to this court filing the instant federal habeas corpus petition.[6] (DE#1). In all, **293**

---

[6]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

**days** expired during which no state post conviction proceedings were pending so as to toll the federal limitations period.

IV. <u>Threshold Issues</u>

A. <u>Statute of Limitations</u>

In its response (DE#14) to this court's order to show cause, the respondent argues correctly that this federal petition is timely filed. <u>See</u> 28 U.S.C. §2244(d)(1)-(2). It is clear that this habeas petition was filed after April 24, 1996, the effective date of the AEDPA, Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners.[7] <u>See</u> 28 U.S.C. §2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus ....").

---

[7]The statute provides that the limitations period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

As noted previously, absent evidence to the contrary, less than one year of the federal limitations period ran during which no state court proceedings were pending before petitioner filed this habeas petition. Thus, the instant federal habeas petition, filed within a year from the time the petitioner's conviction became final, is timely. See Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state post conviction proceedings tolls the AEDPA limitations period).

## B. Exhaustion and Procedural Bar

The respondent argues that claims 1, 2, 4, and 9-12 of this federal petition are either unexhausted or procedurally defaulted from review here. (DE#14:42-45). It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11th Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5th Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152 (1996); Duncan v. Henry, 513 U.S. 364 (1995); Picard v. Connor, 404 U.S. 270 (1971). Exhaustion also requires review by the state appellate and post-conviction courts. See Mason v. Allen, 605 F.3d 1114 (11th Cir. 2010), Herring v. Sec'y Dep't of Corr's, 397 F.3d 1338 (11th Cir. 2005). It is also well established in Florida that claims that could have, and should have been raised on direct appeal are procedurally barred from collateral review, and couching such claims in terms of ineffective

assistance of counsel for failure to preserve or raise them cannot be used to circumvent that rule. Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995).

Regardless, given the procedural history of this federal proceeding, judicial economy sometimes dictates reaching the merits of the claims if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated. See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best."). Since the petitioner cannot prevail on the merits of any of the claims raised in this federal habeas petition, with the exception of claim 13-raising a double jeopardy violation, there is no need to further belabor the procedural exhaustion and bar issue, and therefore all claims will be addressed on the merits below.[8]

V.   Facts

For an appreciation of this case and the numerous claims raised herein, a full review of the facts in the underlying criminal case is warranted.

---

[8]Even if certain claims are technically unexhausted, this Court will exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

Prior to trial, a hearing was held to address the state's intent to rely on child hearsay statements pursuant to Fla. Stat. §90.803(23). (DE#15: Transcript of Child Hearsay Hearing: 104-167). At the hearing, the state presented testimony from four witnesses: R.C.'s mother-Analia Garcia, the lead detective-Gretel Chavarria, the forensic interviewer from the State Attorney's office-Andria Silverman and Detective Connie Smith. The videotape of the forensic interview was played for the court. (DE#15:161). Over defense objection, the trial court found that R.C.'s hearsay statements were reliable and therefore admissible. (DE#15:166). In so ruling, the court found that R.C. appeared to be a competent bright girl, there was minimal delay in her disclosure, her statements were independent of each other and very similar, her resistance to tell what happened was normal, and she had very little motive to fabricate the statements. (DE#15:161-66).

Thereafter, petitioner proceeded to trial. The evidence established that on the afternoon of December 21, 2005, the petitioner drove his cousin, Ms. Garcia, and her 9 year old daughter, R.C., to the doctor's office. (T.458). Ms. Garcia had recently been injured in a car accident and was starting to undergo treatment. (T.459). When Ms. Garcia was called in to see the doctor, petitioner and R.C. went outside to play tag. (T.462). Someone told petitioner that they could not play in that area so he drove R.C. to a nearby strip mall and parked his truck in an alley. (T.463). Petitioner stepped out of the truck and took off his shirt. (T.464). With his shirt and another piece of clothing, he covered both the driver and passenger side windows. (T.465).

At that point, Ms. Connie Cash, the owner of a hair salon in the strip mall, stepped out for lunch. (T.199, 201). As she walked to her car, she saw the parked truck with covered windows, and

11

noticed petitioner shirtless, as R.C. walked around the back of the truck. (T.205-206). Out of concern, Ms. Cash drove off to find a police officer. She flagged down Officer Tedeshi and they both returned to where the truck was parked. (T.211).

Officer Tedeshi observed that both side windows were covered so he looked in through the windshield. (T.225-226). Petitioner was laying on the seat shirtless wearing only a pair of unbuttoned, unzipped shorts which were pulled halfway down, as R.C. was knelling in the foot well of the truck.(Id.). Officer Tedeshi ordered petitioner to open the locked door.(T.227). Immediately, R.C. got out of the truck and told the officer that petitioner was her father, that she was only kissing him because she loved him, and that she did not want him to get hurt.(T.229-230).

Moments later, Detective Connie Smith arrived at the scene.(T.231). R.C. told Detective Smith that petitioner was her uncle, but that she advised Officer Tedeshi that petitioner was her father because he threatened to kill her mother if she did not. (T.297). R.C. also told the detective that petitioner instructed her to kiss his penis and that he touched her breast and vagina.(T.297-299). After Detective Smith told Officer Tedeshi to arrest petitioner, R.C. was transported to the police station. (T.232, 299).

At the station, Detective Gretel Chavarria, from the Miami-Dade Police Department Sex Crimes Bureau, took over the investigation. (T.312). R.C. told Detective Chavarria that petitioner threatened to kill her mother if she did not kiss him on the mouth. (T.319-320). R.C. also stated that petitioner touched her breast and vagina and told her to kiss his penis, which she did because she was scared. (T.320). When R.C.'s mother arrived at the

12

police station, R.C. was crying and nervous. She told her mother that petitioner touched her breast and her vagina.(T.398).

Detective Chavarria obtained a search warrant to collect petitioner's DNA. (T.324). DNA samples were taken from petitioner's clothing, from his mouth, from his penis and from his inner thighs. A swab of R.C.s DNA was also collected. (T.362-363). There was no DNA matching R.C.'s on the samples taken from petitioner. (T.364-365).

In addition to DNA testing, petitioner's clothing was also tested for semen, blood and amylase. (T. 433-435). Petitioner's shirt, shorts and underwear all tested negative for semen and blood. (Id.). Only one cutting from petitioner's underwear and one cutting from his shirt tested positive for amylase. (Id.). The amylase could have been from petitioner's own sweat or saliva.(Id.).

A little over one month later, on January 26, 2006, R.C. was interviewed by Andria Silverman, a forensic interviewer with the State Attorneys Office. (T. 247). During the taped interview, Silverman spoke with R.C. in English and Spanish. (T. 257). At first, R.C. did not want to talk about what happened. (T. 259-260). However, Silverman explained to R.C. that "the reason why we ask children to come here and tell us about it is so that it wont happen again to them or to anyone else." (DE#15: Transcript of Forensic Interview: 49). After some hesitation, R.C. told her that petitioner had touched her breast and her vagina and had forced her to put her mouth on his penis. (Id.:59-64). The video of the interview was introduced into evidence and played for the jury. (T. 268). Since the video was in English and Spanish, jurors were provided with a transcript of the interview, translating the

13

portions that were in Spanish to English. (DE#15: Transcript of Forensic Interview: 45-72).

R.C. was the last witness to testify at the trial. She stated that while she was in petitioner's truck with the windows covered, he took her cell phone and put it in the glove compartment warning her that if she did not do what he wanted he would kill her mother.(T. 466). Petitioner then kissed her mouth, touched her vagina over her clothing, touched her breast and forced her to put her mouth on his penis. (T. 466-473).

## VI. Standard of Review

Since this case was filed long-after April 24, 1996, this Court's review of Petitioner's claims is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996). See Abdul-Kabir v. Quarterman, 530 U.S. 233, 246, 127 S.Ct. 1654, 1664 (2007); Davis v. Jones, 506 F.3d 1325, 1331, n.9. (11th Cir. 2007). Under §2254(d), as Amended by the AEDPA, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d); Evans v. Sec'y Dep't of Corr's, 703 F.3d 1316 (11th Cir. 2013)(citing Johnson v. Upton, 615 F.3d 1318, 1329 (11th Cir. 2010)(quoting Berghuis v. Thompkins, 560 U.S. 370, 130 S.Ct. 2250, 2259, 176 L.Ed.2d 1098 (2010)).

"Under §2254(d), a habeas court must determine what arguments

or theories supported ... the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Wetzel v. Lambert, ____ U.S. _____, 132 S.Ct. 1195, 1198, 182 L.Ed.2d 35 (2012)(citing Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)). "[A]n *unreasonable* application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1862 (2010)(emphasis supplied)(quotation marks omitted).

As the Supreme Court has explained, the statutory phrase "clearly established Federal law" refers only to Supreme Court decisions issued at the time the state court decision was rendered. Greene v. Fisher, ____ U.S. ___, 132 S.Ct. 38, 45, 181 L.Ed.2d 336 (2011)(a Supreme Court decision issued three months after the last state court decision on the merits of a federal constitutional issue cannot be considered in determining clearly established federal law for §2254(d)(1) purposes); Cullen v. Pinholster, ____ U.S. ___, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011)("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.")(quotation marks omitted); Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003)(explaining that "clearly established Federal law under §2254(d)(1)" is measured "at the time the state court renders its decision")(quotation marks omitted). "[A]n unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas

court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico V. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1862 (2010)(quotation marks omitted).

The Supreme Court repeatedly has admonished that "[t]he petitioner carries the burden of proof" and that the §2254(d)(1) standard is a high hurdle to overcome. See Bobby v. Dixon, 565 U.S. ____, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (2011)("Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")(quoting Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 786-87 (2011))(quotation marks omitted). See also Cullen, 131 S.Ct. at 1398 (acknowledging that §2254(d) places a difficult burden of proof on the petitioner); Renico, 130 S.Ct. at 1866 ("AEDPA prevents defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002)(Section 2254(d) "demands that state-court decisions be given the benefit of the doubt.").

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated

16

on the merits'" and entitled to deference); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(<u>quoting</u> <u>Early v. Packer</u>, 537 U.S. at 7-8).

Thus, state court decisions are afforded a strong presumption of deference, even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. <u>Harrington</u>, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, <u>citing</u> <u>Harrington</u>, 131 S.Ct. at 784-85 and <u>Wright v. Sec'y for the Dep't of Corr's</u>, 278 F.3d 1245, 1254 (11th Cir. 2002)). <u>See also</u> <u>Renico</u>, 130 S.Ct. at 1862 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)). However, this deference applies to the state court's decision of the claim, not necessarily to its analysis.

To the extent that petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under §2254(d) and the Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S.Ct. at 1398. Consequently, this Court is limited to reviewing only the record that was before the state courts at the time the courts rendered its order and decisions.

17

(Id.). Finally, 28 U.S.C. §2254(e)(1) dictates that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." 28 U.S.C. §2254(e)(1). See Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. den'd, ___ U.S. ___, 131 S.Ct. 647, 178 L.Ed.2d 513 (2010). Because of the presumption under §2254(e)(1) that state court findings of fact are correct, "where factual findings underlie the state court's legal ruling, the Court's already deferential review [under §2254(d)] becomes doubly so." Childers v. Floyd, 642 F.3d 953, 972 (11th Cir. 2011)(en banc).

## Legal Standard-Ineffective Assistance of Counsel

In this habeas proceeding, the petitioner also challenges counsel's effectiveness, which is subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard. See Massaro v. United States, 538 U.S. 500, 505 (2003); Gomez-Diaz v. United States, 433 F.3d 788, 791 (11th Cir. 2005). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001); Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims challenging counsel's effectiveness on direct appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 120, 129 S.Ct. 1411, 1418 (2009). There is a strong

presumption that counsel acted effectively. (Id.:690). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052.

Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. See also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 778. A habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 356, 371, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam)).

The relevant question "is not whether a federal court believes

19

the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). "[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (<u>Id</u>.).

However, it is also well settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5th Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir.), <u>cert. den'd</u>, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. <u>See</u> <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992)(<u>quoting</u> <u>United States ex rel. Cosey v. Wolff</u>, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland v. Washington</u>, 466 U.S. at 690-91.

VII. <u>Discussion</u>

In **claim 1,** petitioner asserts that the prosecutor's improper and prejudicial closing argument violated his right to a fair trial.(DE#1:7-12). This claim was raised and rejected on direct appeal, where the Third District Court specifically found that none of the prosecutor's comments were outside the bounds of proper closing argument. <u>See</u> <u>Gonzalez v. State</u>, 35 So.3d 984 (Fla. 3d DCA 2010);(DE#14:Ex.I).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11th Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11th Cir.), <u>cert.</u> <u>den'd</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11th Cir.), <u>cert. den'd</u>, 485 U.S. 964 (1988).

The purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. <u>See</u> <u>United States v. Iglesias</u>, 915 F.2d 1524, 1529 (11th Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by the court. <u>See</u> <u>Chandler v. Florida</u>, 449 U.S. 560, 574 (1981)("Trial courts must be especially vigilant to guard against any impairment of the defendant's right

21

to a verdict based solely upon the evidence and the relevant law."). See also Ward v. State, 765 So. 2d 299, 300 (Fla. 5th DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); Laboo v. State, 715 So. 2d 1034, 1035 (Fla. 1st DCA 1998)(prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Thus, argument urging the jury to decide the matter based upon factors other than those it is instructed to consider is improper. The Courts have, therefore, condemned argument that is inflammatory or appeals to bias or prejudice. United States v. Childress, 58 F.3d 693, 715 (D.C. Cir. 1995), cert. denied, 516 U.S. 1098 (1996)("It is well established that a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence."). Further, it is beyond dispute that an expression by the prosecutor of his or her own belief in the defendant's guilt is improper. See Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. De Christoforo, 416 U.S. 637 (1974)).

Petitioner maintains that the prosecutor argued twice to the jury that he had the burden of proving his innocence therefore violating his right to remain silent and violating his right to be presumed innocent. The specifically objected to closing reveals as follows:

What Connie Smith [sic] and Detective Tedeshi saw all by itself can't tell you beyond a reasonable doubt that this man committed these crimes. Just like seeing a man walking into this courtroom with a wet umbrella shaking off the raindrops from his coat can't tell you for sure its been raining outside, but boy it sure is a strong clue. Circumstantial evidence. You have that in this

22

case. **There is not one shred of evidence for any innocence in this explanation of what Connie Cash [sic] or Detective Tedeshi saw.**

...

This was a child honest and straightforward in answering the question as best as she could. I asked her, Do you [have] see him in court? All she could do was point. I had to show her the photograph because its too painful to look at the man in the face. The man that betrayed her trust this way. **Had she been pressured or threatened? Absolutely not. There is not one shred of evidence to that.** Was she given any money or preferred treatment or benefit? Did she get a free trip to Disney World? What this child got and what she will hopefully get is justice.

(T.521, 537)(emphasis added).

After reviewing the record in its entirety, including the prosecution's closing argument, it is evident that the prosecutor's remarks were tied to a summary of the evidence presented at trial and inferences derived therefrom. The first comment, "there is not one shred of evidence for any innocence in this explanation of what Connie Cash or Detective Tedeshi saw" was made in the course of the prosecutor explaining to the jury the circumstantial evidence in the case. (T. 521). <u>See e.g.</u>, <u>United States v. Granville</u>, 716 F.2d 819, 822 (11th Cir. 1983)(finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence, the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another); <u>United States v. Johns</u>, 734 F.2d 657, 663 (11th Cir. 1983)(noting that the State may present its "contention as to the conclusions the jury should draw from the evidence").

Petitioner also claims the second comment, "[h]ad she been

23

pressured or threatened? Absolutely not. There is not one shred of evidence to that[.]," was improper. (T. 537). However, when read in context, that statement simply commented that there was a lack of evidence showing that the child had been coerced or pressured into making claims against petitioner. In no way did these statements shift the burden of proof onto petitioner, comment on his right to remain silent or violate his right to be presumed innocent.

This court points out that any potential prejudice was diminished by the trial court's clear and correct instructions to the jury regarding the burden of proof, the presumption of innocence and the right to remain silent. (T.576-580). The court further instructed the jury that it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. (Id.). Finally, the court instructed the jury that argument by the lawyers is not evidence in the case. (Id.). It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Thus, there is no reasonable probability that the result of the trial would have been different if the now challenged comments had not occurred.

As previously noted, contrary to the petitioner's assertion, the prosecutor did not mislead the jury as to the burden of proof and/or in any way shift the burden of proof to the petitioner, which is clearly improper under both federal and state law principles. See e.g., Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11th Cir. 1983); United States v. Downs, 615 F.2d 677, 679 (5th Cir.1980); Jackson v. State, 575 So.2d 181 (Fla. 1991)(when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof); Atkins v. State, 878 So.2d 460 (Fla. 3d DCA 2004)(state improperly shifted the burden of proof when it

implied that the defendant needed to prove that the victim was lying in order to receive acquittal); Northard v. State, 675 So.2d 652, 653 (Fla. 4 DCA 1996)(prosecutor's argument was impermissible because it asked the jury to determine who was lying as the proper test of determining guilt).

It is also important to note that there is no indication whatsoever that the prosecutor made any or all of the subject comments in a deliberate attempt to distract the jury from the issue of the petitioner's guilt or mislead the jurors as to issues of guilt or innocence. However, even if this Court were to view the challenged comments as improper for any or all the reasons claimed, when taken together or separately, these arguments did not so invade the province of the jury to render the trial fundamentally unfair, requiring a new trial. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)(improper prosecutorial comment not reversible error unless remarks "so infect the trial with unfairness as to make the resulting conviction a denial of due process").

Under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. Therefore, the rejection of this claim in the state forum should not be disturbed here. See 28

U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In **claim 2,** petitioner argues that the trial court abused its discretion by allowing Garcia, Silverman, and Detectives Chavarria and Smith to testify about R.C.'s statements. Petitioner claims that R.C.s hearsay statements should have been excluded as unreliable on the basis that: (1) R.C. did not want to discuss the incident with her mother or Silverman; (2)Silverman coerced her into talking by telling her that other children would be hurt if she did not say what happened; and, (3) R.C.'s statements to Detective Chavarria were inconsistent with her statements to Silverman and her mother.(DE#1:13-15).

Federal habeas courts do not review state evidentiary rulings unless the alleged error renders the trial fundamentally unfair. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Here, the Third District Court of Appeal found no evidentiary error under Florida law. It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas corpus courts should not second-guess them on such matters." <u>Herring v. Sec'y, Dep't of Corr</u>., 397 F.3d 1338, 1355 (11th Cir. 2005). A review of the record shows that the trial court judge did not make an erroneous evidentiary determination, much less an error that rendered the trial fundamentally unfair.

In the instant case, the trial court judge complied with <u>Fla. Stat</u>. §90.803(23) and the Florida Supreme Court's mandate in <u>State v. Townsend</u>, 635 So.2d 949 (Fla. 1994), by making detailed findings of fact so as to establish reliability. Specifically, the trial court found that R.C. is a bright 9-year old girl who is clearly competent, that two of her statements were made on the same day of

the incident, and a third made one month later.(DE#15:161-166). As such, the court concluded there was little delay in her disclosure, her resistance was not uncommon given that her offender was a family member, her statements were consistent, and she had very little motive to fabricate.(Id.). The record supports that the trial court did not abuse its discretion in determining that the child's hearsay statements were reliable.

Nonetheless, the fact that evidence meets the requirements of an exception to the hearsay rule does not necessarily mean it is admissible as evidence. The statement might be inadmissible for other reasons, including that the use of the statement would violate the defendant's constitutional right of confrontation. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." 154 U.S. Const. Amend. VI. The right guaranteed by this part of the Sixth Amendment differs from the kind of protection that is afforded by state evidentiary rules governing the admission of hearsay.

The standard for determining whether the admission of a testimonial hearsay statement against a criminal defendant violates the right of confrontation was modified by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004). Before Crawford, the issue was controlled by Ohio v. Roberts, 448 U.S. 56, 66 (1980), which held that a hearsay statement could be admitted in a criminal trial without violating the right of confrontation if it was shown that the declarant was unavailable and the out-of-court statement bore adequate indicia of reliability. The Roberts test focused on the reliability of the statement. As explained in Roberts, a statement had adequate indicia of reliability if it either fell

within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." (Id.).

However, in Crawford, the Supreme Court dispensed with the Roberts reliability analysis for testimonial hearsay statements and held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. The Court emphasized that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68. "Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." (Id.).

Here, R.C. testified at trial and was subject to cross examination by the defense. The right to cross examine a witness at trial concerning her current and prior testimony satisfies the commands of the confrontation clause. See California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Since the state court's denial of this claim was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented, relief must be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v.

<u>Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(<u>quoting</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002).

In **claim 3,** petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to convey a favorable plea offer extended by the state which would have resulted in a 10-year term of imprisonment followed by 10 years of sex offender probation. (DE#1:12). Petitioner maintains that he would have accepted the offer had counsel properly conveyed it to him with the assistance of a Spanish interpreter. (<u>Id</u>.).

The law is clear that defense counsel has an affirmative duty under the Sixth Amendment of the U.S. Constitution to provide competent advice, and to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to an accused. See <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). The Supreme Court has indicated that an evidentiary hearing may be conducted to determine whether the movant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. <u>Lafler</u>, <u>supra</u>.

Notably, "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010). In <u>Missouri v.</u>

Frye, ___ U.S. ____, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) the Supreme Court said: "[A]s a general rule, defense counsel has the duty to communicate formal [plea] offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." If an attorney allows such an offer "to expire without advising the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance the Constitution requires." (Id.).

The Strickland framework applies to advice regarding whether to plead guilty. Hill v. Lockhart 474 U.S. 52, 57-59 (1985). See also Premo v. Moore, 562 U.S. 115, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011); Padilla v. Kentucky, 559 U.S. 356, 360-61, 130 S.Ct. 1473, 1480-81 (2010)("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

The analysis of Strickland's performance prong is the same, but instead of focusing on the fairness of the trial, the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Thus, when an ineffective assistance of counsel claim concerns the rejection of an offered plea agreement, the defendant "'must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial.'" Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995)(quoting Hill v. Lockhart, 474 U.S. at 58, 106 S.Ct. at 370)(alterations in original).

It is also noted that a defendant has no right to be offered a plea, nor is there any federal right for a judge to accept it. Missouri v. Frye, ___ U.S. ___, ___, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012). The Sixth Amendment right to counsel does include effective representation during the plea negotiation process. Padilla v. Kentucky, 559 U.S. at 373. A "critical obligation of counsel [is] to advise the client of 'the advantages and disadvantages of a plea agreement.'" Padilla, 559 U.S. at 370 (quoting Libretti v. United States, 516 U.S. 29, 50-51 (1995)). "Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client...." United States v. McLain, 823 F.2d 1457, 1464 (11th Cir. 1987), overruled on other grounds by United States v. Watson, 866 F.2d 381 (11th Cir. 1989); see Holloway v. Arkansas, 435 U.S. 475, 490 (1978) (stating joint representation of conflicting interests is suspect because it may well preclude defense counsel from exploring possible plea negotiations). Further, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, ___ U.S. at ___, 132 S.Ct. at 1410. When defense counsel allows an offer to expire without advising the defendant or allowing him to consider it, counsel has provided ineffective assistance. (Id.).

Of course, an attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible sentencing consequences. Brady v. United States, 397 U.S. 742, 756 (1970). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). When a defendant "'lacks a full understanding of the

risks of going to trial, he is unable to make an intelligent choice of whether to [plead] or take his chances in court.'" (Id.). (quoting Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995)). See also Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ....").

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or has been rejected because of counsel's deficient advice, defendants must demonstrate:

> a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.... [and] a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

(Id.); see Lafler v. Cooper, ___ U.S. ___, ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012)(same). Strickland's inquiry into whether the result of the proceeding would have been different "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." (Id).

To be clear, counsel has a responsibility to discuss the

advantages and disadvantages of a plea offer with movant so that movant can then decide whether to accept or reject such an offer. <u>Padilla</u>, 559 U.S. at 369-379 (a critical obligation of counsel is to advise the client of the advantages and disadvantages of a plea agreement). Counsel's complete failure to confer with his client about the advantages and disadvantages of a plea offer just before the start of trial is deficient performance. <u>See</u> <u>Padilla</u>, 559 U.S. at 368.

However, that does not end the inquiry. The question then becomes whether movant can demonstrate counsel's deficiency prejudiced him.[9] Thus, petitioner must demonstrate: (1) there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence than in fact were imposed. <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

When the identical claim was raised in the Rule 3.850 proceeding, the trial court denied the claim following an evidentiary hearing. The court provided the following in its written order:

... This Court had the opportunity to evaluate the

---

[9]Although it appears that movant maintained his innocence during trial, sentencing, and appeal, this does not eliminate his ability to demonstrate prejudice here. <u>See</u> <u>Lalani v. United States</u>, 315 Fed. Appx. 858 (11th Cir. 2009) (an assertion of innocence does not preclude the movant from asserting he was prejudiced by counsel's misadvice regarding pleading guilty or pursuing a plea agreement).

demeanor and credibility of both Mr. Petre and the
defendant on this issue. The Court finds that the
defendant was not credible in his testimony, and finds
that the testimony of Mr. Petre is credible. Moreover,
Mr. Petre's testimony that he communicated all plea
offers to his client is corroborated by the transcript of
proceedings from the day before jury selection began in
this case. Specifically, on March 31, 2008, Judge Ellen
Leesfield, the presiding judge in this matter, stated the
following: "I want to be sure that Mr. Gonzalez
understands what he is facing, what the plea offer is and
understands from him I've spoken to you. I don't think
I've ever inquired of him on the records [sic] that he
understands the maximum penalty in this case and that he
understands what the plea is. I don't want him coming
back and saying he didn't know, his lawyer didn't tell
him." See attached transcript of proceedings from March
31, 2008, pages 27-28.

At that point, the Court asked the prosecutor to advise
what the charged crimes were, and the maximum possible
penalty for each crime. Id. at 28. The court advised the
defendant to listen to that information. It should be
noted that an official court translator was present for
these proceedings. The prosecutor advised the Court and
defendant of his charges (1 count of capital sexual
battery and 2 counts of lewd or lascivious molestation)
and the maximum penalties (life without parole for count
1 and life with a 25 year-year minimum mandatory on
counts 2 and 3). Id.

Mr. Petre told the Court that he told the defendant about
the original ten year offer. Id. at 30. The Court asked
the defendant if he understood there was an offer
previously made to him. He responded "yes." Id. The Court
asked if the State would re-offer a plea of ten years in
prison followed by ten years of probation, but the State
said no. Id. The Court gave the defendant additional time
to consult with Mr. Petre to see if he wanted to accept
the State's new offer of twenty years in prison followed
by 10 years of probation. Id. at 29-30. At the conclusion
of their discussion, Mr. Petre stated that the defendant
not only was rejecting the State's twenty-year offer, but
also was making no counter-offers to the State's plea
offer. Id. at 30-31. The Court then said "All right. So,
just to ask you then Mr. Gonzalez you have had a

34

conversation with your attorney about what was offered by
the State and you declined it." <u>Id</u>. at 31. The
defendant's answer was "Correct." <u>Id</u>. The Court then
inquired further: "And you have no counter offer, is that
correct?" <u>Id</u>. The defendant's answer: "Correct." <u>Id</u>.

(DE#14:Ex.Q). Based upon the record of the proceedings from March
31, 2008 (DE#14:Ex.BB), and the testimony presented during the
evidentiary hearing, the court denied petitioner's claim. That
denial was subsequently *per curiam* affirmed on appeal in a decision
without written opinion. <u>Gonzalez v. State</u>, 129 So.3d 1077 (Fla. 3d
DCA 2013); (DE#14:Ex.V).

The denial of the claim in the Rule 3.850 proceeding was
proper. Independent review of the transcript from March 31, 2008,
confirms the foregoing. At the start of the proceeding, the court
announced "[w]e are back on the record in the case of the State of
Florida versus Eduardo Gonzalez. Who needs a translator?"
(DE#14:Ex.BB:103). The prosecutor responded, "[t]he defendant."
(<u>Id</u>.). The court then confirmed, "[a]ll right. So, the defendant
has a translator." (<u>Id</u>.).

Thereafter, the trial judge stated, "I want to be sure that
Mr. Gonzalez understands what he is facing, what the plea offer
is...." (DE#14:Ex.BB:127). The prosecutor responded:

> [t]he defendant is looking at life, plus life, plus life.
> He is looking at two minimum/mandatories. I made an offer
> to the defendant of ten years in prison followed by ten
> years sex offender probation. The defendant turned that
> offer down so that offer is no longer on the table.

(<u>Id</u>.:128-129). The court asked petitioner, "Do you understand there
was an offer previously made to you?" (<u>Id</u>.:130). Petitioner
responded, "[ye]s."(<u>Id</u>.). The court then suggested that defense

35

counsel confer with petitioner regarding the state's new plea offer
of 20 years imprisonment. Counsel informed the court as follows:
"[n]o, at this point he rejects the twenty years State offer. I
told him about the ten year offer. (<u>Id</u>.:130-131). I would ask the
court if he is amenable but he is not." (<u>Id</u>.).

After hearing from defense counsel, the court addressed
petitioner stating "[s]o, just to ask you then Mr. Gonzalez you
have had a conversation with your attorney about what was offered
by the State and you declined it."(<u>Id</u>.). Petitioner responded,
"[c]orrect." The court further inquired, "[a]nd you have no counter
offer; is that correct?" (<u>Id</u>.). Petitioner again stated,
"[c]orrect."(<u>Id</u>.).

Moreover, at the evidentiary hearing, petitioner's trial
attorney, Randall Petre, testified that he discussed with
petitioner the possibility of pleading guilty rather than going to
trial considering the strength of the state's case and the
consequences of a guilty verdict.(DE#14:Ex.N:44-47). Attorney Petre
recalled that he used the services of the official court translator
to discuss any important matters with petitioner.(<u>Id</u>.). Counsel
further stated that he discussed the state's plea offer of 10 years
imprisonment followed by 10 years probation with petitioner "at
least half [sic] dozen times" and petitioner declined the offer.
(<u>Id</u>.:47).

Right before the trial started, a different prosecutor took
over the case. She revoked the original plea offer of 10 years
imprisonment and 10 years probation and extended an offer of 20
years imprisonment.(<u>Id</u>. 47-47). Attorney Petre testified that he
advised petitioner of the new plea offer but he did not think that

36

petitioner would accept it since it involved more prison time than the first offer.(Id.). He explained that "[m]y mind set was he was adamant about not taking the ten and I tried seven different ways to get him to at least look at the plea and accept it, he didn't take it. So when the offer went from 10 to 20, you know, it was very unlikely in my mind that he was going to take the plea."(Id.:58). Counsel stated that petitioner also rejected the 20 year plea offer maintaining that he did not commit the crimes alleged.(Id.:47-48).

Petitioner, however, testified that he would have accepted the original plea offer of 10 years imprisonment followed by 10 years probation if counsel would have conveyed the plea offer to him.(Id.:65). According to petitioner, he did not learn of the plea offers until after the trial was completed when he received copies of the transcripts.(Id.:67). He stated that his attorney "always" told him that they were going to take the case to trial.(Id.:69).

Given this record, the petitioner has not demonstrated either in the state forum or this habeas proceeding that his trial counsel failed to convey a plea offer of 10 years imprisonment followed by 10 years of sex offender probation. Thus, the petitioner has not demonstrated prejudice under Strickland. In fact, it is refuted by the record which reveals that a colloquy was had on the record before the commencement of trial regarding the status of any offers. Under the totality of the circumstances present here, the rejection of this claim in the state forum was proper and should not be disturbed here. Williams v. Taylor, supra.

In **claim 4,** petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to conduct

37

independent DNA testing. (DE#1:23-24). When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, finding in pertinent part as follows:

> ... First, the defendant fails to state with any specificity what evidence should have been independently tested for DNA. Moreover, he fails to explain with any clarity how such testing would have affected the outcome of the trial other than to state in conclusory fashion that "they could exonerate Defendant of Sexual Battery." The defendant cannot make such conclusory pleadings and expect to receive an evidentiary hearing. See Kennedy v. State, supra, 547 So. 2d 912.

(DE#14:Ex.Q). That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. Gonzalez v. State, 129 So.3d 1077 (Fla. 3d DCA 2013); (DE#14:Ex.V).

Both in the state forum, and in this habeas proceeding, petitioner has failed to demonstrate that had the evidence been independently tested for DNA, it would have affected the outcome of the trial. To the contrary, it was uncontroverted at trial that DNA testing was conducted and none of the samples taken from petitioner tested positive for R.C.'s DNA. Specifically, the following items were tested: a swab of petitioner's penis, a cutting from the front area of petitioner's underwear and a cutting from the inside bottom of petitioner's shirt (T. 362). The DNA found on these items matched only petitioner's DNA (T. 364-365). R.C.'s DNA was not found on any of the items (T. 365). Accordingly, petitioner's trial attorney maintained that the non-existence of R.C.s DNA on the items tested was consistent with the petitioner's defense that the allegations were fabricated (T. 541, 555).

Thus, even if counsel had conducted independent DNA testing,

no showing has been made that it would have affected the outcome of the trial. Consequently, no prejudice under <u>Strickland</u> has been demonstrated, and the resolution of this claim in the state forum should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 5,** petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to move to disqualify the trial court judge for allowing the prosecutor to invade the province of the jury (DE#1:24). In the Rule 3.850 proceeding, petitioner argued that the province of the jury was invaded when the state's witness, Silverman, stated that "the child victim was telling the truth." (DE#14:Ex.N:14). Petitioner claims that this was prejudicial because "it's the jury's job and not the state witness to determine the truthfulness of a witness." (<u>Id</u>:23).

In finding petitioner's claim meritless, the post conviction court provided, in pertinent part, as follows:

> ...During the trial, the defense objected to the State's question of forensic interviewer Adria [sic] Silverman about why she asked the child victim the difference between the truth and a lie, and requested a mistrial. See trial transcript, pages 283-284. The Court asked Ms. Silverman to come sidebar, and a discussion with the witness was held with the attorneys for the State and defense present. <u>Id</u>. at 286-287. During that sidebar, the Court denied the motion for mistrial, but decided in an abundance of caution, that she would clarify the issue of whether the witness was testifying about the child victim's veracity before the jury. <u>Id</u>. at 287. The trial judge also stated that she understood why the prosecutor asked the question in the way that she did, and the reason for the objection because it could be seen "either way." <u>Id</u> at 285. At that point, the witness returned to the stand and before the jury, the Court and witness engaged in the following dialog:

THE COURT: When you ask a child do you know the difference between the truth and a lie, what is the purpose of asking that question?

THE WITNESS: To establish whether or not the child, in fact, knows what is the truth and, in fact, knows what is a lie and that there are consequences to lying.

THE COURT: Okay. And is it within your province and are you here today telling us that whether you believe or disbelieve this child. In other words, is that your job to tell us whether the child is telling the truth of [sic] not.

THE WITNESS: No, that is not my job.

THE COURT: You do not make a determination of that; that's up to the jury; is that correct?

THE WITNESS: That's correct.

It is clear based upon this exchange that the defense attorneys would have no good faith basis to move to disqualify the trial judge. The Court heard the objection to the State's question, explained that she could see why it was asked and why it might have been objected to; she denied the motion for a mistrial and clarified the issue with the witness in front of the jury. The Court engaged in no wrongdoing to justify a motion to disqualify the judge. Any motion to disqualify the judge on this basis would have properly been denied because it does not fit within the grounds to disqualify a judge under the Florida Rule of Judicial Administration 2.330. Thus, this claim will also be rejected.

(DE#14:Ex.N:12-13). The court's denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. Gonzalez v. State, 129 So.3d 1077 (Fla. 3d DCA 2013); (DE#14:Ex.V).

Under Florida law, a motion to disqualify is governed substantively by Fla. Stat. §38.10, and procedurally by Florida Rule of Judicial Administration 2.330. Lynch v. State, 2 So.3d 47,

78 (Fla. 2008). Rule 2.330 provides that "a motion to disqualify shall show that 'the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge'; or that the judge is either an interested party to the matter, related to an interested party, related to counsel, or 'is a material witness for or against one of the parties to the cause.'" Id. (quoting Fla. R. Jud. Admin. 2.330(d)).

Petitioner's claim that the trial judge was biased where she allowed the prosecutor to invade the province of the jury, is refuted by the record. Review of the trial proceedings shows that the prosecutor engaged in the following line of questioning with Witness Silverman:

> PROSECUTOR: During your interview with RC, did you ask her about telling the truth versus telling lies?
>
> WITNESS SILVERMAN: Yes.
>
> PROSECUTOR: Did you do that because you thought she was lying to you?
> DEFENSE COUNSEL: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> WITNESS SILVERMAN: No.
>
> PROSECUTOR: Can you explain to the members of the jury why is it you go through asking questions of the child; what is the truth and what is a lie and the distinction?
>
> WITNESS SILVERMAN: Well, its part of the practice. Its part of a forensic interview to ask children if they can tell the difference between a truth and a lie and to ask them questions about that.

(T. 274-275). At the conclusion of Silverman's testimony, defense

41

counsel moved for a mistrial arguing that Silverman invaded the
province of the jury by stating that R.C. was truthful (T. 284).
The trial judge responded that she understood why the prosecutor
asked the question and also understood why the defense objected (T.
284-285). Defense counsel's motion for mistrial was denied;
nonetheless, the trial judge offered to clarify for the jury that
Silverman's job is not to believe or disbelieve the child, but to
make sure the child understands the difference between the truth
and a lie (T. 285).

Contrary to petitioner's assertions, the trial judge was not
biased and did not allow the prosecutor to invade the province of
the jury. The transcript of the proceedings shows that the court
acknowledged defense counsel's concern that Witness Silverman's
response to the prosecutor's question could have left the jury with
the false impression that it was her job to determine whether R.C.
was telling the truth or lying. For that reason, the trial judge
clarified for the jury, through her direct questioning of
Silverman, that it was solely their job as jurors, not Silverman's
job, to decide whether R.C. was truthful. The trial judge did not
exhibit judicial bias. To the contrary, the judge made sure that
the jury understood that it was within their province to determine
whether the child was truthful or not.

Therefore, petitioner has failed to demonstrate that defense
counsel was ineffective for failing to move to disqualify the trial
judge where there was no basis for such a motion. Thus, petitioner
is entitled to no relief on this claim. See Brownlee v. Haley, 306
F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for
failing to raise issues clearly lacking in merit); Chandler v.
Moore, 240 F.3d 907, 917-18 (11th Cir. 2001)(rejecting argument for

42

ineffective assistance of counsel where counsel failed to raise a non-meritorious claim); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000)(counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(no ineffective assistance of counsel for failing to preserve or argue meritless issue); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

As a result, petitioner has failed to show that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland. Thus, the state court's denial of this claim in the Rule 3.850 proceeding, where the claim was presented, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002)).

In **claim 6,** petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to move to disqualify the trial judge for allowing a witness to testify as an expert without having been qualified to do so (DE#1:25). In the Rule 3.850 proceeding, the trial court denied relief on this claim, providing as follows:

> The defendant asserts that during the trial, forensic interviewer Adria [sic] Silverman was allowed to "offer expert opinion without being an expert," and that because of this alleged error, his attorney should have moved to disqualify the judge.... [T]his claim lacks merit because the defendant does not show such a motion would have been legally sufficient under Florida Rule of Judicial Administration 2.330. Moreover, it should be noted that at no time during the presentation of Adria [sic] Silverman's testimony did the State seek an expert opinion from her.... <u>See also</u> <u>Russ v. State</u>, 934 So. 2d 527 (Fla. 3d DCA 2006)(Forensic interviewer allowed to testify about experience in interviewing children and their responses when not asked about truthfulness of that child victim). In fact, during the trial, the following exchange occurred between the trial court judge and the prosecutor:
>
>> THE COURT: Are you asking to qualify [witness Silverman] as an expert?
>>
>> MISS ADAMS: Actually, no. I'm not asking her opinion. I am not going to ask her if she thought the child was telling the truth. In fact, I have case law which I can get for the Court, Russ versus State. It's a 3rd District court of Appeals case that deals with the ability of a forensic interviewer based on experience to testify about certain factors that are common themes that they may find. Im not going to go anywhere near asking her opinion about whether the child was telling the truth or not. Based on her experience she can testify to different patterns she has seen emerge over her career.

> Id. at 262.... Ms. Silverman did not render any opinion
> about the child victim's credibility, because that is a
> finding for the jury to make. Because Ms. Silverman did
> not testify as an expert witness, the defendant's claim
> is without merit and will be summarily denied.

(DE#14:Ex.Q:13-14). The trial court's denial was subsequently *per
curiam* affirmed on appeal in a decision without written opinion.
<u>Gonzalez v. State</u>, 129 So.3d 1077 (Fla. 3d DCA 2013); (DE#14:Ex.V).

The state post-conviction court's decision on this ground
resulted in a reasonable determination of the facts in light of the
evidence and a reasonable application of <u>Strickland</u> under either
prong. The record illustrates that the prosecutor asked Witness
Silverman the following question:

> In this particular case I would like to ask you if based
> on your experience, if you got an impression from RC that
> she just didn't want to talk about this anymore.

(T. 261). Prior to the witness answering, the defense objected and
the court inquired as to whether the prosecutor was asking to
qualify Silverman as an expert (T. 262). The prosecutor responded:
"Actually no. I'm not asking her opinion. I'm not going to ask her
if she thought the child was telling the truth." (<u>Id</u>.). Over
defense objection, the court allowed Silverman to respond to the
prosecutor's question (T. 264). Silverman responded that she did
get the impression that R.C. did not want to talk anymore. (<u>Id</u>.).

Generally, a federal court will not review a state court's
admission of evidence in habeas corpus proceedings. <u>McCoy v.
Newsome</u>, 953 F.2d 1252, 1265 (11th Cir. 1992). Federal habeas corpus
relief based on an evidentiary hearing will not be granted unless
the ruling affects the fundamental fairness of the trial. (<u>Id</u>.).

45

Evidence that is erroneously admitted deprives a defendant of fundamental fairness only if it was a "crucial, critical, highly significant factor" in obtaining the conviction. Williams v. Kemp, 846 F.2d 1276, 1281 (11th Cir. 1988).

Under Florida law, state witnesses cannot vouch or directly testify as to the truthfulness of the victim. Russ v. Sec'y, Dep't of Corr's, 476 Fed. Appx. 706, 708 (11th Cir. 2012)(citing Tingle v. State, 536 So.2d 205, 205 (Fla. 1988)). However, the Florida Rules of Evidence do not prevent a lay witness from testifying about past experiences. (Id.). The record does not support petitioner's assertion that Silverman, as a lay witness, was improperly allowed to give opinion testimony. Instead, the record reflects that Silverman was not giving her opinion but was merely stating that based on her experience as a forensic interviewer she got the impression that R.C. did not want to continue discussing the incident with her. See Russ v. State, 934 So.2d 527, 530-31 (Fla. 3d DCA 2006)(finding that testimony of forensic interviewer regarding the manner in which a child discloses sexual abuse was admissible in prosecution for lewd and lascivious exhibition and sexual battery on a child). Because Silverman's testimony was not erroneously admitted, petitioner's trial was not fundamentally unfair. Even if the state court erroneously admitted Silverman's testimony, there is nothing to suggest that this was a "crucial, critical, highly significant factor" in obtaining petitioner's conviction.

Moreover, petitioner's assertion that defense counsel was ineffective for failing to move for disqualification of the trial judge for allowing Silverman to give expert testimony warrants no relief. The record refutes petitioner's claim. The trial judge did

46

not allow Witness Silverman to give her opinion as to whether she believed that R.C. has been sexually abused or not. The judge simply allowed Silverman to state that, based on her experience as a forensic interviewer, she got the impression that R.C. did not want to discuss the incident any further. Thus, petitioner has failed to demonstrate that defense counsel was ineffective for failing to move to disqualify the trial judge where there was no justifiable basis for such a motion. Thus, petitioner is entitled to no relief on this claim. See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917-18 (11th Cir. 2001)(rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000)(counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(no ineffective assistance of counsel for failing to preserve or argue meritless issue); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

As a result, petitioner has failed to show that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland. Thus, the state court's denial of this claim in the Rule 3.850 proceeding, where the claim was presented,

was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>See also</u> <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(<u>quoting</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002)).

In **claim 7,** petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to object to the verdict in count one where the jury did not specifically find that he was over the age of 18 at the time of the offense (DE#1:26). This issue was raised and rejected in petitioner's Rule 3.850 proceedings (DE#14:Ex.N:24-26). The trial court found as follows:

> Count 1 of the Information charged the defendant with Sexual Battery on a Child Less than 12 by an Adult 18 years of Age or Older. <u>See</u> attached copy of Information.
>
> The judge gave the following instructions to the jury regarding the elements of that offense:
>
> To prove the crime of sexual battery upon a child less than 12 years of age, as charged in Count 1 of the Information, the State must prove the following three elements beyond a reasonable doubt:
>
> 1. R.C. a minor was less than 12 years of age.
>
> 2. Eduardo Gonzalez committed an act upon R.C. in which the sexual organ of Eduardo Gonzalez penetrated or had union with the mouth of R.C. a minor.

    3. Eduardo Gonzalez was eighteen years of age or older at the time of the sexual battery.

    See attached copy of transcript of jury instructions, page 574. It is clear based upon this jury instruction, that when the jury returned a verdict of guilty on Count 1 of the Information, they did make a finding that the defendant was 18 years of age or older. Consequently, the defendant's claim that his attorney was ineffective for failing to object to the jury verdict on this basis is baseless and will be summarily denied. See Teffeteller, supra (an attorney is not ineffective for failing to raise a meritless claim).

(DE#14:Ex.Q:14-15). That denial was *per curiam* affirmed on appeal in a decision without written opinion. Gonzalez v. State, 129 So.3d 1077 (Fla. 3d DCA 2013);(DE#14:Ex.V).

    Neither the necessity to return a special verdict nor the form of the verdict presents a federal question. McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992)("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), cert. denied, 507 U.S. 975, 113 S.Ct. 1423, 122 L.Ed.2d 792 (1993).

    Nevertheless, under Florida law, it is not necessary that the jury make a finding by a special verdict that the defendant is eighteen years of age or older where a capital offense is specifically charged and proved. See Baker v. State, 604 So.2d 1239 n. 2 (Fla. 3d DCA 1992); Glover v. State, 863 So.2d 236, 238 (Fla. 2003)(holding that although defendant's age is a statutory element of capital sexual battery, failure to include the age element in the jury instructions was not fundamental error where the defendant's age was not a disputed fact).

Petitioner's age was not a disputed fact in this case. The jury could not reasonably have found petitioner to have been less than 18. The information, which was read to the jury by the trial judge, alleged that petitioner was over 18 years of age (DE#14:Ex.B). The jury saw petitioner in the courtroom throughout the entire trial. The jury heard R.C.s mother, Analia Garcia, testify that she was 40 years old and that petitioner was her older cousin (T. 386, 389). Furthermore, the trial judge specifically instructed the jury that to prove the crime of sexual battery the State had to prove in part that petitioner was 18 years of age or older at the time of the sexual battery (T. 573-74). While it may have been better to include a finding as to petitioner's age in the verdict form, the failure to do so did not did not sufficiently prejudice the outcome of the case such that the outcome of the proceeding would have been different.

Moreover, had trial counsel moved for a judgment of acquittal on this ground or, as petitioner asserts, had he objected, the trial court would have been within its discretion to allow the state to reopen its case to present additional testimony. See Stewart v. State, 420 So.2d 862, 865 (Fla. 1982) (reopening a case for additional testimony is a matter for the trial court's discretion); K.K. v. State, 717 So. 2d 193 (Fla. 5th DCA 1998). Therefore, petitioner has failed to demonstrate that trial counsel's performance was deficient. Having failed to meet either prong of the Strickland test, petitioner has not established that he is entitled to habeas corpus relief on this claim.

Additionally, under **claim 7**, petitioner further contends for the first time that (1) he was convicted of a crime that was not

charged in the information, (2) the state failed to produce evidence as to the essential elements of the offense and (3) the sexual battery statute is misleading (DE#1:26-32). Petitioner's sub-claims were never presented before the state forum and are therefore unexhausted and procedurally barred. Nonetheless, the claims will be reviewed on the merits.

Petitioner was charged in Count 1 of the information with sexual battery on a child under 12.

> EDUARDO GONZALEZ, ... , being a person of the age of eighteen (18) years of age or older, did unlawfully and feloniously commit sexual battery upon R.C. (A MINOR), a person less than twelve (12) years of age, by [sic] BY PENETRATING R.C.'S (A MINOR) MOUTH WITH HIS PENIS OR PLACING HIS PENIS IN UNION WITH R.C.'S MOUTH, in violation of s. 794.011(2), Fla. Stat....

(DE#14:Ex.B). Each of the necessary elements required to prove sexual battery on a child were alleged: that petitioner was 18 years of age or older, that petitioner placed his penis in union with R.C.s mouth, and that R.C. was less than 12 years old at the time of the offense. Moreover, evidence as to each element of the crime was presented at trial: R.C. testified that she was 9 years old at the time of the incident (T. 456), she stated that petitioner forced her mouth to have union with his penis (T. 472) and R.C.'s mother testified that she was 40 years old and that petitioner was her older cousin making him over the age of 18 (T. 386, 389). A jury found petitioner "[g]uilty as charged in the Information" of sexual battery on a child less than 12 years of age pursuant to Fla. Stat. §794.011(2). (DE#14:Ex.C). The record shows that contrary to petitioner's assertion, he was convicted as charged and there was ample evidence to support each element of the

charged offense.

Moreover, petitioner contends that "this statute is misleading because its language provides [for] two different crimes."(DE#1:29-30). Petitioner incorrectly argues that "legislation [sic] intended to use this statute when it is proven that the person 18 years of age or older commits or attempts to commit and in the process thereof injures the sexual organs of a person less than 12 years of age." Id. Review of Florida Statute §794.011(2)(a), shows that petitioner's reading of the statute is incorrect. Section §794.011(2)(a) applies to a person over 18 who either (1) commits sexual battery or (2) who while attempting to commit sexual battery injures the sexual organs of a child under the age of 12. Subsection (a) of the statute makes the attempt to commit sexual battery just as serious as a completed sexual battery when the sexual organs of a child under 12 are injured. Just because each subsection of the statute can be violated in two different ways (i.e. either by committing sexual battery on a child or attempting to commit sexual battery and injuring the sexual organs of a child) does not make it misleading.

In **claim 8,** petitioner asserts he was denied effective assistance of counsel where his lawyer failed to object to the trial judge assisting the prosecutor on how to conduct direct examination of state witnesses. (DE#1:32-33). In this proceeding, petitioner fails to point out where this error occurred. However, in the Rule 3.850 proceeding, petitioner at least made reference to trial transcript pages 265, 287 and 288, in support of this claim. (DE#22:Ex.N:28-29). The portions of the record cited by petitioner in his Rule 3.850 motion concern the testimony of the state's forensic interviewer, Silverman. The trial court denied relief and

provided as follows:

> In Claim 8, the defendant alleges that the trial court judge assisted the prosecutor in this case "with cross examination during direct [sic] and the Court loss [sic] all of its neutrality in intervening into the trial on behalf of the State prosecutor." <u>See</u> defendant's Memorandum of Law in Support of Motion for Post Conviction Relief 3.850, page 9. Although the defendant includes several cites to pages of the trial transcripts, specifically page 265 and 287-288, he fails to state with specificity how the trial court judge assisted the prosecutor, what was objectionable about the so-called assistance, or how this alleged assistance affected the outcome of the trial. The defendant completely fails to demonstrate any deficiency with this attorney or give any specifics about how these alleged errors impacted the outcome of the trial. Thus, this claim is legally insufficient to warrant an evidentiary hearing. <u>See</u> <u>Kennedy</u> and <u>Strickland</u>, <u>supra</u>.

(DE#14:Ex.Q:15-16). That denial was *per curiam* affirmed on appeal in a decision without written opinion. <u>Gonzalez v. State</u>, 129 So.3d 1077 (Fla. 3d DCA 2013); (DE#14:Ex.V).

The state post conviction court's decision on this ground resulted in a reasonable determination of facts in light of the evidence and a reasonable application of <u>Strickland</u> under either prong. The trial transcript demonstrates that at the end of page 264, the prosecutor asked Witness Silverman if R.C. had disclosed her assailant (T. 264). After Silverman responded "yes," the prosecutor inquired as to the name of the person. (<u>Id</u>.). Silverman responded that it was "Guary." (<u>Id</u>.). Immediately thereafter, on page 265, the prosecutor asked Silverman if she knew who "Guary" was (T. 265). It should be noted that there is no indication that the prosecutor intended to illicit hearsay by asking this question. Nonetheless, Silverman responded that she knew who "Guary" was

53

because R.C.'s mother had told her the name that R.C. used to refer to petitioner (T. 265). At that point, defense counsel objected on hearsay grounds. (<u>Id</u>.). In so ruling, the trial judge responded that "[i]t would be hearsay. It's sufficient to say she came to understand the relationship with him."(<u>Id</u>.).

The record refutes petitioner's assertion that the trial judge assisted the prosecutor during the direct examination of Witness Silverman. Instead, the record reflects that the trial judge agreed with defense counsel's hearsay objection. The judge responded that to avoid further hearsay testimony regarding what R.C.s mother said to Silverman, it would be sufficient for Silverman to simply state that she came to understand the relationship between R.C. and petitioner. Based on the court's ruling, agreeing with defense counsel, the prosecutor rephrased her question and asked Silverman if "Guary" was a family member (T. 265). Given this record, an objection to the trial judge's actions would have been baseless.

Moreover, petitioner further contends that pages 287-288 of the trial transcript show that the trial court lost its neutrality by intervening on behalf of the prosecutor and that defense counsel was ineffective for failing to object thereto. Again, petitioner's claim is without merit. Review of the record illustrates that defense counsel objected after the prosecutor asked Silverman the following question: "During your interview with RC, did you ask her about telling the truth versus lies?" (T. 274). After Silverman responded "yes," the prosecutor asked if she did that because she thought R.C. was lying. (<u>Id</u>.). Over defense objection, Silverman stated that she did not.

At the conclusion of Silverman's testimony, the trial judge

asked the attorneys to come sidebar. The judge explained that she understood why the prosecutor asked the question and also understood why the defense objected (T. 284-285). Accordingly, the trial judge decided to clarify before the jury that it was not up to a witness to determine the truthfulness of the victim:

> THE COURT:  Let me go back to something that we discussed and ask this witness something. When you ask a child do you know the difference between the truth and a lie, what is the purpose of asking this question?
>
> THE WITNESS: To establish whether or not the child, in fact, knows what is the truth and, in fact, knows what is a lie and that there are consequences to lying. Its not to make a determination as to whether or not the child is telling the truth.
>
> THE COURT: Okay. And is it within your province and are you here today telling us that whether you believe or disbelieve this child. In other words is that your job to tell us whether the child is telling the truth or not?
>
> THE WITNESS: No, that is not my job.
>
> THE COURT: You do not make a determination of that; that's up to the jury; is that correct?
>
> THE WITNESS: That's correct.

(T. 287-288).


    Contrary to petitioner's assertion, the record supports the fact that the trial judge remained neutral and did not intervene on the prosecutor's behalf. The trial judge questioned Witness Silverman in the presence of the jury to ensure that the jurors understood it was their job, not Silverman's job, to determine whether R.C. was telling the truth. Again, there was no basis for defense counsel to object to the actions of the trial judge. Given

this record, petitioner cannot demonstrate deficient performance by counsel or prejudice. The rejection of this claim in the state forum should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 9**, petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to investigate the facts surrounding the case (DE#1:33). In his Rule 3.850 motion, petitioner specified that defense counsel was ineffective where he failed to investigate: R.C.'s school, her teacher, adults who could have influenced her or allowed her to see them in a sexual situation, and exposure to any sexually explicit material, television or movies (DE#14:Ex.N:29).

This claim was denied by the trial court after applying the federal <u>Strickland</u> standard, finding as follows:

> Without providing any information about what such an investigation would have revealed, or how it could have affected the testimony of the child victim in this case, the defendant merely states in conclusory fashion that "with proper investigation counsel would have discovered that the child victim got these ideas [what ideas?] from another source other than the alleged sexual assault by him, which would change the outcome of the trial." <u>Id</u>. This type of conclusory allegation is insufficient to warrant an evidentiary hearing and will be summarily denied. <u>See</u> <u>Wright v. State</u>, 857 So. 2d 861, 877 (Fla. 2003).

(DE#14:Ex.Q:16). That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. <u>Gonzalez v. State</u>, 129 So.3d 1077 (Fla. 3d DCA 2013);(DE#14:Ex.V).

Petitioner has not demonstrated either in the state court or this habeas proceeding what further investigation would have

revealed and how the discovered information would have changed the outcome of the trial. Petitioner concludes that further investigation would have shown that R.C. "got these ideas" from some other unknown source (DE#14:Ex.N:29). Such bare and conclusory allegations, bereft of record support, are subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

Regardless, the evidence admitted at trial was more than sufficient to sustain the convictions. See Jackson v. Virginia, 443 U.S. 307 (1979). R.C. testified at trial that petitioner kissed her mouth, touched her breast and her vagina and forced her to place her mouth on his penis (T. 468-72). R.C.'s testimony at trial was consistent with the statements that she made to Detective Smith and Detective Chavarria right after the incident occurred. Furthermore, R.C.'s testimony was also consistent with the statements she later made to the forensic interviewer, Silverman. In addition, Officer Tedeshi's observations of petitioner, laying down on the front seat of the truck shirtless with his shorts pulled halfway down unbuttoned and unzipped while R.C. was kneeling in the foot well, cannot be ignored (T. 226). Thus, even if counsel's performance could in any way be deemed deficient for failing to conduct further investigation, the petitioner suffered no prejudice as a result of the alleged deficiency. Since the petitioner has not shown that there was a reasonable probability that he would have been found not guilty of the subject crimes had defense counsel conducted further investigation, he has failed to satisfy the second-prong of Strickland. Under these circumstances, the petitioner is entitled to no relief on this claim.

In **claim 10**, petitioner asserts that the prosecutor's improper comments violated his right to a fair trial (DE#1:33-34). This

claim was raised in petitioner's Rule 3.850 motion wherein he argued that the prosecutor made two improper comments: the first during jury selection where the prosecutor "asked the jury to sympathize with the child victim by putting their own children's behavior in the equation" and the second during closing argument where the prosecutor stated that the victim would never be normal (DE#14:Ex.N:30). In denying the claim, the trial court provided as follows:

> This is a claim that could have or should have been raised on direct appeal, and therefore cannot be raised in a motion for post conviction relief. <u>See</u> Florida Rule of Criminal Procedure 3.850(c). Moreover, the defendant fails to show how any comments made by the prosecutor in jury selection or closing argument were inappropriate or affected the outcome of the trial. It should also be noted that the Third District Court of Appeal specifically found that the prosecutor in this case made no improper comments during closing argument [in this case]. <u>See Gonzalez</u>, 35 So. 2d at 984. This claim will also be summarily denied.

(DE#14:Ex.Q:16). That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. <u>Gonzalez v. State</u>, 129 So.3d 1077 (Fla. 3d DCA 2013);(DE#14:Ex.V).

Review of the record reveals that petitioner did in fact raise part of this claim in his direct appeal wherein he argued that the prosecutor's statement, during closing argument, that the child will never be back to normal, was improper (DE#14:Ex.F:40-41). While that part of petitioner's claim was properly raised in the state forum, the trial court correctly noted that petitioner's additional argument regarding the prosecutor's improper comment during jury selection should be procedurally barred since it should

have been raised on direct appeal, but was not.[10] (DE#14:Ex.Q:17). Regardless, this court will reach the merits of this claim since the merits are easily resolvable against the petitioner. <u>See Lambrix v. Singletary</u>, 520 U.S. 518 (1997).

As previously noted, the standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11th Cir. 1984). Petitioner claims he was denied the right to a fair trial during jury selection when the prosecutor told the jury "to judge the case as parents with children in attempt to gain sympathy for the victim and place their way of dealing with their kids into the equation." (DE#1:34). Careful review of the record reveals that petitioner is referring to the following line of questioning:

> PROSECUTOR:  Do you think that if you were selected as a juror, do you think it would be appropriate for you to say in your mind, well, I know how my kid would react under this set of circumstances so if this child hasn't reacted in the same way I cannot believe her. Do you think that would be an appropriate assumption to make?
>
> JUROR BARNES: No, it wouldn't.
>
> PROSECUTOR: Is there anybody here [who] has children [that] feel differently? Say listen I know kids. I know how kids acts [sic] and this is the way children should react in a situation, anybody in this front section?

---

[10]It should be noted that in this proceeding petitioner argues that the improper comment was made during opening statement; however, review of the record and review of petitioner's Rule 3.850 motion confirms that the improper comment petitioner refers to was made during jury selection.

JUROR CABRERA: They will say the truth.

PROSECUTOR: How about over here? Anybody over here think they are going to pre-suppose the children should act the way that children act in your life?

(T. 77).

Contrary to petitioner's assertion, this was not an improper attempt to gain sympathy for the victim. The record illustrates that the prosecutor was inquiring as to whether jurors would judge the victim's reaction in this case against the reaction that they felt was appropriate based on their experiences with their own children. The prosecutor was not trying to garner sympathy for the victim. Instead, through this questioning, the prosecutor was trying to determine which jurors had a preconceived notion as to what the reaction of a child would be under such circumstances. There was nothing improper about the prosecutor's line of questioning.

Moreover, petitioner contends that during closing argument, the prosecutor improperly stated that, "[t]his child will never be back to normal." (DE#34). This argument was raised in petitioner's direct appeal. (DE#14:Ex.F:40-41). The Third District Court *per curiam* affirmed the judgment, finding that none of the prosecutor's comments were outside the bounds of proper closing arguments. Gonzalez v. State, 35 So.3d 984 (Fla. 3d DCA 2010);(DE#14:Ex.I).

As explained in claim 1, the purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. See United States v. Iglesias, 915 F.2d 1524, 1529 (11th Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by

60

the court. See Chandler v. Florida, 449 U.S. 560, 574 (1981); see also Ward v. State, 765 So. 2d 299, 300 (Fla. 5th DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); Laboo v. State, 715 So. 2d 1034, 1035 (Fla. 1st DCA 1998) (prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Thus, argument urging the jury to decide the matter based upon factors other than those it is instructed to consider is improper. The Courts have, therefore, condemned argument that is inflammatory or appeals to bias or prejudice. United States v. Childress, 58 F.3d 693, 715 (D.C. Cir. 1995), cert. denied, 516 U.S. 1098 (1996). Further, it is beyond dispute that an expression by the prosecutor of his or her own belief in the defendant's guilt is improper. See Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. De Christoforo, 416 U.S. 637 (1974)).

Petitioner maintains his right to a fair trial was compromised by the prosecutor's statement, during closing argument, that R.C. would never be "back to normal." (T. 565). Review of the record shows that the above argument by the prosecutor was in response to defense counsel's closing argument that R.C. was right "back to normal" just a couple days after the incident, and if she experienced any trauma at all, it was the result of being at the police station with strangers (T. 557). This assertion, that R.C. was back to normal in a couple of days, supported the defense's theory that the allegations were fabricated. Thus, the prosecutor's comments that R.C. would never be back to normal constituted a fair comment on defense counsel's closing argument. See United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1983)(noting that the State may

present its "contention as to the conclusions the jury should draw from the evidence").

Even if this Court were to view the challenged comments as improper for any or all the reasons claimed, when taken together or separately, these arguments did not render the trial fundamentally unfair, requiring a new trial. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)(improper prosecutorial comment not reversible error unless remarks "so infect the trial with unfairness as to make the resulting conviction a denial of due process"); Strickland v. Washington, 466 U.S. at 695 (to find prejudice for purposes of ineffective assistance claim, court "must consider the totality of the evidence before the judge or jury").

Under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Accordingly, the trial court's denial of this claim in the Rule 3.850 proceeding, which was affirmed by the appellate court, and the denial in the direct appeal, did not constitute a decision that was contrary to or an unreasonable application of federal constitutional law. Therefore, the petitioner is not entitled to habeas relief. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In **claim 11**, petitioner asserts that he was denied effective

assistance of counsel, where his lawyer failed to object to the state playing a videotaped forensic interview that was in English and Spanish causing confusion to jurors. (DE#1:34). The identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, which provided as follows:

> The defendant claims that his attorney should have objected to the State publishing a videotape of the child victim's forensic interview because the interview was in Spanish and in English. The defendant's claim is invalid because an attorney is not ineffective for failing to raise a claim which has no merit. See Teffeteller v. Dugger, 734 So. 2d 1009, 1019-1020 (Fla. 1999)(trial counsel cannot be deemed ineffective for failing to prevail on a meritless issue). In this case, at the time the State published the videotape of the child victim's forensic interview, it also provided to the jury a transcript of the interview which had been prepared by an Official Court Interpreter and translated the Spanish parts of the video into English. See attached copy of trial transcript, pages 268-271. Moreover, prior to the playing of the videotape, the Court gave the following admonission to the jury:
>
>> Ladies and gentlemen, there are transcripts for you. This videotape is, a lot of it is in English, especially in the beginning. A lot of the interview that you heard the last witness [Adria Silverman] talk about the fact that she was the interviewer and a lot of this was conducted in English. Some of it was conducted in Spanish especially toward the end. To that end there has been a transcript transposed for you or translated for you. You will have these in your hand. You won't need them most of the time, but if you sort of turn through the pages kind of as you go along, try to stay on the page you are at. If you hit some area of Spanish you don't understand, you need to use the transcript. You will have it there for yourself and the translation. Remember again some of you speak Spanish and some of you speak only English. If you speak both

> languages and you think there's a disparity, a
> mild disparity, official translator is the
> translator we use. However, if you see
> something you feel is such a big difference
> that you don't live with it, then make a note
> of it and ask to go sidebar and we will have
> discussion with you.

> Id. at 272. Under this set of circumstances, this Court
> properly instructed the jury about the use of an official
> English translation of a recording that contained a
> foreign language, as required by Florida Jury Instruction
> 2.10. Had the defense attorney objected to the
> publication of the videotaped interview, there would have
> been no legal basis to sustain the objection; and even if
> the error had been preserved for appellate review, there
> is no reasonable likelihood that the appellate court
> would have found error in the trial court's handling of
> this matter. Consequently, the defense attorney was not
> ineffective for failing to object to the publication of
> the video....

(DE#14:Ex.Q:11-12). That denial was *per curiam* affirmed on appeal
in a decision without written opinion. Gonzalez v. State, 129 So.
3d 1077 (Fla. 3d DCA 2013);(DE#14:Ex.V).

As petitioner asserts, the videotaped forensic interview of
R.C. was in English and in Spanish. For that very reason, the
prosecutor had the interview transcribed by the official court
reporter and had the few parts that were in Spanish translated to
English. (DE#15:45-72). The jury was provided with a transcript of
the forensic interview that contained the necessary translations;
this way the jurors, who did not speak Spanish, would be able to
follow along and understand the entire interview (T. 268-69). The
trial court also instructed the jury to refer to the transcript
whenever they did not understand any part of the video that was in
Spanish (T. 271-72). Given this record, the defense did not have a
legal basis to object to the playing of the video.

Even if counsel had objected, no prejudice has been shown since the purported deficiency would not have affected the outcome of the trial. See Jackson v. Virginia, 443 U.S. 307 (1979); Smith v. White, 815 F.2d 1401 (11th Cir. 1987). Assuming arguendo that defense counsel had objected, there was no basis for the judge to sustain the objection. Moreover, even if the objection had been sustained and the video excluded, the forensic interviewer, Andria Silverman, testified as to what was disclosed during the interview and R.C. testified independent of the video. Under these circumstances, petitioner cannot show that objecting to the playing of the video would have resulted in an acquittal of the charge. As such, the rejection of this claim in the rule 3.850 was proper and should not be disturbed here. Williams v. Taylor, supra.

In **claim 12** petitioner argues that cumulative errors deprived him of his right to a fair trial. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012)(citing United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005)). Claims of cumulative error are analyzed by first considering the validity of each claim individually, and then examining any errors that are found in the aggregate and in light of the trial as a whole to determine whether the petitioner was afforded a fundamentally fair trial. Id. (citing United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

Petitioner's cumulative error claim must fail. Only one of petitioner's individual claims of error have merit, the double jeopardy claim, therefore there is nothing to accumulate.

65

In **claim 13,** petitioner asserts that his sentences on two counts of lewd and lascivious molestation on a child under the age of 12 constituted double jeopardy (DE#1:35). Petitioner raised the identical claim in his Rule 3.850 motion. (DE#14:Ex.N:31-32). In denying the motion, the trial court provided as follows:

> The defendant alleges that his convictions for two (2) counts of Lewd and Lascivious Molestation violate his right to be free from double jeopardy. The defendant alleges that the touching of the victim's breast and her vagina constituted one single act and therefore could not result in separate sentences. This is a claim that could have or should have been raised on direct appeal and therefore is not cognizable under a motion for post conviction relief. See Florida Rule of Criminal Procedure 3.850(c). Therefore, this claim will also be summarily rejected by the Court.

(DE#14:Ex.Q:17). That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. Gonzalez v. State, 129 So.3d 1077 (Fla. 3d DCA 2013);(DE#14:V).

The state court's application of the procedural bar was erroneous. In Florida, a defendant's double jeopardy claim is properly raised in a motion for post conviction relief. See State v. Florida, 894 So.2d 941, 944-45 (Fla. 2005)(recognizing that a double jeopardy claim raises a question of fundamental error, and thus, a defendant is not procedurally barred from raising the claim for the first time in post-conviction relief proceedings), citing, Lippman v. State, 633 So.2d 1061, 1064-65 (Fla. 1994)(holding that a double jeopardy claim raises a question of fundamental error which is not procedurally barred when raised initially in Rule 3.850 proceedings). A federal court should not defer to a state's interpretation of a state procedural rule unless the rule and its

66

interpretation rests on an independent and adequate state ground. Harris v. Reed, 489 U.S. 225 (1989). Accordingly, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. Walker v. Engle, 703 F.2d 959, 965-67 (6th Cir.), cert denied, 464 U.S. 951 (1983). Here, the bar was improperly applied with regard to this claim and this federal court need not honor it. This claim will therefore be reviewed on the merits below.

The Fifth Amendment to the United States Constitution guarantees that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and applies to the states through the Fourteenth Amendment, e.g., Benton v. Maryland, 395 U.S. 784, 787(1969). The guarantee consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). This case concerns only the third protection of the Double Jeopardy Clause, the protection from multiple punishments for the same offense.

In Florida, applying the applicable Blockburger test,[11]

---

[11]Generally, "[t]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Ohio v. Johnson, 467 U.S. 493 (1984). "[T]he question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed. Where [the legislature] intended ... to impose multiple punishments, imposition of such sentences does not violate the Constitution." Albernaz v. United States, 450 U.S. 333 (1981); see Williams v. Dugger, 827 F.Supp. 1568, 1572-74 (S.D.Fla. 1993). Absent a clear indication of contrary legislative intent, the courts apply the "same-elements" test of Blockburger v. United States, 284 U.S. 299 (1932), to determine whether a single criminal incident may be cumulatively punished under

separate convictions for different offenses arising from a single act are only permissible where each separate offense contains an element that the other lacks. See <u>Fla.Stat</u>. §775.021(4)(a),(b).[12] "The proper analysis to determine whether offenses arise from the same criminal episode requires consideration of the following factors: 1) whether separate victims are involved; 2) whether the crimes occurred in separate locations, and 3) whether there has been a temporal break between the incidents." <u>Russo v. State</u>, 804 So.2d 419, 420-21 (Fla. 4th DCA 2001)(<u>quoting</u> <u>Vasquez v. State</u>, 778 So.2d 1068, 1070 (Fla. 5 DCA 2001)). The two convictions here for lewd and lascivious molestation on a child under the age of 12 violate petitioner's double jeopardy protections. See <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).

    In this case, petitioner was charged by information with two

---

separate statutory provisions. The same-elements test inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution. <u>Id</u>.

[12]Florida Statute §775.021(4)(a) provides that

Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Florida Statute §775.021(4)(b) mandates the imposition of convictions and sentences for each criminal offense committed in the course of one criminal episode, but at the same time the statute sets forth three exceptions to this mandate. The statute provides that the imposition of multiple convictions and sentences is not authorized for crimes committed in the course of one criminal episode in cases where one of the following three circumstances exist: (1) the offenses require identical elements of proof, (2) the offenses are degrees of the same offense as provided by statute, or (3) the lesser offense has elements which are subsumed by the greater offense.

counts of lewd and lascivious molestation on a child under 12 (Counts 2 and 3). Counts 2 and 3 mirror each other, each count alleged the same offense and the same act:

Count 2

And the aforesaid Assistant State Attorney, under oath, further information makes EDUARDO GONZALEZ, on or about December 21, 2005, in the County and State aforesaid, being a person of the age of eighteen (18) years of age or older, did unlawfully and intentionally touch the breasts, genitals, genital area, or buttocks, or the clothing covering the breasts, genitals, genital area, or buttocks, of R.C. (A MINOR), a person less than 12 years of age in a lewd or lascivious manner, in violation of 800.04(5)(b), Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

Count 3

And the aforesaid Assistant State Attorney, under oath, further information makes EDUARDO GONZALEZ, on or about December 21, 2005, in the County and State aforesaid, being a person of the age of eighteen (18) years of age or older, did unlawfully and intentionally touch the breasts, genitals, genital area, or buttocks, or the clothing covering the breasts, genitals, genital area, or buttocks, of R.C. (A MINOR), a person less than 12 years of age in a lewd or lascivious manner, in violation of 800.04(5)(b), Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

(DE#14:Ex.B:11-12).

The law is clear that two convictions for the same crime constitutes a violation of the constitutional guarantee against double jeopardy. See Manetta v. State, 81 So.3d 560 (Fla. 3d DCA 2012)(holding that double jeopardy precludes dual judgments and sentences on two separate counts of lewd and lascivious molestation

on a child where the counts were "identical in every respect; and thus did not so much as allege separate acts which might form the basis of separate judgments even if it were permitted under the law."), citing, Partch v. State, 43 So.3d 758, 761-62 (Fla. 1st DCA 2010)("applying double jeopardy where 'neither the charging information nor the jury verdict form included language clearly predicating the dispute charges on two distinct acts. The ambiguous wording of the charging information and the jury verdict makes it impossible for this court to know if the jury convicted the appellant of one act of sexual battery or two distinct acts'").

The present case is indistinguishable from Manetta, 81 So.3d at 560.[13] Here, as in Manetta, petitioner was convicted and sentenced on two separate counts of lewd and lascivious behavior. The counts were identical to each other alleging exactly the same offense using the same exact language. The counts did not so much as allege separate acts. As such, convictions for Counts 2 and 3 violate double jeopardy principles.

Even assuming arguendo that the information alleged separate acts, which it does not, double jeopardy still bars the entry of dual judgments and sentences on Counts 2 and 3. The Third District Court held in Cabanela v. State, 871 So.2d 279 (Fla. 3d DCA 2004), that double jeopardy bars multiple convictions and sentences for lewd and lascivious behavior which arise out of a single criminal episode where there is no significant spatial and/or temporal break

---

[13]In Manetta v. State, 81 So.3d 560, 562 (Fla. 3d DCA 2012), the Third District did not reach the issue as to whether State v. Meshell, 2 So.3d 132 (Fla. 2009), which permits multiple charges alleging separate, but closely related acts of sexual abuse under section 800.4(1)(a), Fla. Stat., applies to prosecutions under Fla. Stat. § 800.04(5)(c). It stands to reason that Meshell's applicability was not addressed because Counts I and II were not separate acts, they were "identical in every respect," as was the case here.

in the episode. In so holding, the Third District found that all four acts of lewd and lascivious assault for which Cabanela was charged, convicted, and sentenced arose out of a single criminal episode which occurred in a short time period. (Id.:282). There was no significant spatial and/or temporal break between any of the activities for Cabanela to pause, reflect, and form a new criminal intent to commit separate offenses. (Id.). Accordingly, the Third District vacated three of Cabanela's four convictions and sentences for lewd and lascivious assault on double jeopardy grounds.

Applying Cabanela to the present case, here, the record shows that the petitioner drove R.C. to a nearby mall where he covered the windows of his parked truck and while inside touched R.C.'s breast, her vagina and forced her to kiss his penis. This was a single criminal episode which occurred in a short period of time with no spatial and/or temporal break between activities. Accordingly, two convictions for lewd and lascivious molestation on a child cannot stand.

Review of the record shows that trial counsel failed to object on the basis of a double jeopardy violation, a ground that was meritorious. There is no valid strategic reason for this omission. Since petitioner's conviction and sentence entered as to either Count 2 or Count 3 of the information were barred by the Double Jeopardy Clause of the Fifth Amendment, trial counsel's failure to object and raise the issue upon the jury's verdict and subsequent conviction amounted to ineffective assistance, and petitioner was prejudiced thereby. Strickland v. Washington, supra. See also Wilcox v. McGee, 241 F.3d 1242, 1246 (9th Cir. 2001)(holding that counsel's failure to move, on double jeopardy grounds, for dismissal of indictment at defendant's second trial for same

burglary offense was ineffective assistance of counsel, and failure
to make motion that would have preserved double jeopardy claim
prejudiced defendant, requiring the granting of the writ and
vacation of petitioner's conviction). The state courts' contrary
conclusion in the post-conviction proceedings was an unreasonable
application of clearly established federal law, as announced by the
United States Supreme Court, and should not stand. The writ should
therefore issue as to one of the two convictions and sentences for
lewd and lascivious molestation on a child.

In **claim 14**, petitioner asserts that he was denied effective
assistance of counsel where his lawyer failed to object to the
introduction of the victim's videotaped forensic interview
(DE#1:36). Specifically, petitioner argues that "counsel's
performance fell below an objective standard when he failed to, and
at the very least move to suppress [the] videotape and or request
a continuance to properly test the evidence, but counsel ignored
his duties rendering his assistance unreasonable which, as [a]
result deprives petitioner of constitutional mandates." (Id.). It
appears that petitioner is arguing the same claim that he raised in
his amended Rule 3.850 motion wherein he asserted that counsel was
ineffective for failing to object to the use of the video of the
child victim's interview since it had a different date stamp on it
than the date the interview was conducted. (DE#14:Ex.O:34-35).

The claim was denied by the post-conviction court which
provided as follows:

> ... [T]he defendant asserted that his attorney allowed
> the State to play a videotape of the child victim's
> forensic interview, despite the fact that the date on the
> videotape was different from the date on which the actual

interview took place. During the evidentiary hearing
conducted in this case, defense counsel Mr. Petre was
asked about this issue. He indicated that because the
Court had ruled that the forensic interview was
admissible as child hearsay, he did not have a good faith
basis to object to its admission into evidence.... He
said that he could see nothing about a discrepancy
between the date stamp on the video and the actual date
of the interview that would have rendered the videotape
inadmissible....

The court had the opportunity to obtain a copy of the
videotape of the victim's forensic interview during the
evidentiary hearing on this matter. In addition, the
court reviewed the trial testimony of the forensic
interviewer, Ms. Adria Silverman. During her testimony,
Ms. Silverman explained that the forensic interview
occurred on January 26, 2006, and said that the camera
recorded the date incorrectly.... Based upon this
evidence, the Court finds no error on the part of Mr.
Petre for failing to object to the admissibility of the
forensic interview based upon the date stamp on the
video, and denies this claim as well.

(DE#14:Ex.Q:17). That denial was subsequently *per curiam* affirmed
on appeal in a decision without written opinion. <u>Gonzalez v. State</u>,
129 So. 3d 1077 (Fla. 3d DCA 2013);(DE#14:Ex.V).

Review of the record shows that prior to the start of the
trial, the court held a hearing to determine the admissibility of
R.C.'s videotaped forensic interview among other hearsay
statements. After the prosecutor presented testimony from four
witnesses including forensic interviewer, Silverman, defense
counsel objected to the admissibility of the videotape on
reliability grounds (DE#15:158-59). Counsel's argument was premised
on R.C.'s hesitancy to state what happened and the allegedly
coercive nature of the statement's made to her by Silverman, who
told her that if she did not talk about what happened, the person
who did something to her could do the same thing to another child.

At the conclusion of the hearing, the trial court found that the video was reliable and trustworthy therefore admissible (DE#15:161-66). Thereafter, during the trial, prior to the prosecutor playing the videotape of R.C.'s interview for the jury, defense counsel again objected on hearsay grounds. The court reminded counsel: "[t]hat discussion we had and my ruling is the same." (T. 256).

The record is clear that defense counsel objected to the admissibility of the videotape on hearsay grounds. Nonetheless, petitioner maintains that counsel was ineffective for failing to object to the admissibility of the videotape based on the discrepancy between the date displayed on the video and the date that the interview actually occurred (DE#:36).

This issue was addressed before the jury during Witness Silverman's testimony. Silverman testified that the forensic interview of R.C. took place on January 26, 2006 (T. 253). As soon as the video was played for the jury, when the date of June 1, 2006, came up, the prosecutor immediately addressed the discrepancy in the dates (T. 273). Silverman clarified for the jury that the date of June 1, 2006 is "just the way that the camera records the date." (T. 273).

This discrepancy did not make the videotape of the interview suppressible and there was no reason for defense counsel to request a continuance to "test the evidence." Prior to trial, defense counsel had viewed the video of the interview and had spoken with R.C. (DE#14:Ex.N:50). Defense counsel stated that he had no doubt that R.C. was the child in the video. (Id. at 50-51). Petitioner has failed to show that counsel was deficient in this respect.

Even if counsel had objected to the admissibility of the video based on the discrepancy in the date, no showing has been made in the state Rule 3.850 proceeding nor this federal habeas proceeding, that the outcome of his trial would have been different. Petitioner has not demonstrated prejudice under Strickland.

Because the state decision resulted in a reasonable application of Strickland under either prong and a reasonable determination of the facts in light of the record, petitioner is not entitled to habeas corpus relief on this ground. The state's rejection of the claim should not be disturbed here. Williams v. Taylor, supra.

## VIII.   Evidentiary Hearing

Petitioner's request for an evidentiary hearing must be denied. To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, show both extraordinary circumstances and reasonable diligence entitling a petitioner to enough equitable tolling to prevent his motion to vacate or habeas petition from being time-barred. See generally Chavez v. Secretary Florida Dept. of Corrections, 647 F.3d 1057, 1060-61 (11th Cir. 2011)(holding that an evidentiary hearing on the issue of equitable tolling of the limitations period was not warranted in a §2254 proceeding and further finding that none of the allegations in the habeas petition about what post-conviction counsel did and failed to do came close to the serious attorney misconduct that was present in Holland, instead, were at most allegations of garden variety negligence or neglect). If so, he gets an evidentiary hearing and the chance to prove that those factual allegations are true. (Id.). As noted by the Eleventh

Circuit, "[t]he allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." (Id. at 1061). Based upon the reasons stated above, this is not one of those cases where an evidentiary hearing is warranted on the limitations issue or otherwise.

## IX.  Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised, with the exception of the double jeopardy claim, are clearly without merit, petitioner cannot satisfy the Slack test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## X. Conclusion

Based upon the foregoing, it is recommended that the petition for writ of habeas corpus be GRANTED solely to the extent that claim 13, concerning petitioner's double jeopardy issue, be granted and one of his two convictions for lewd and lascivious molestation be vacated based on a violation of petitioner's double jeopardy rights; that a certificate of appealability be denied; and, the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 22nd day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Eduardo Gonzalez, Pro Se
     DC#K00577
     Gulf Correctional Institution Annex
     Inmate Mail/Parcels

699 Ike Steele Road
Wewahitchka, FL 32465-0010

Magaly Rodriguez, Ass't Atty Gen'l
Office of the Attorney General
Rivergate Plaza
444 Brickell Avenue
Suite 650
Miami, FL 33131